

**SO ORDERED.**

**SIGNED this 02 day of February, 2007.**

/s/ Dale L. Somers
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

TIMOTHY J. DURLER,
KIMBERLY S. DURLER,

                DEBTORS.

CASE NO. 03-16992-12
CHAPTER 12

**OPINION DETERMINING THAT DEBTORS' RESTITUTION PAYMENTS
MUST BE SET OFF AGAINST THEIR NONDISCHARGEABLE DEBT AND
OTHER UNSECURED DEBT TO FIRST NATIONAL BANK OF SPEARVILLE**

This matter is before the Court to resolve a question raised by the Debtors' motion to determine the amount due under their confirmed Chapter 12 plan and to modify their plan. The Debtors appear by counsel Dan W. Forker, Jr. Creditor First National Bank of Spearville ("the Bank") appears by counsel Shannon D. Wead. The Court has reviewed the relevant materials and is now ready to rule.

When the Debtors' Chapter 12 plan was confirmed, a criminal case concerning Mr.

Durler's alleged prepetition impairment of the Bank's security interests was pending in a Kansas state court. After confirmation, Mr. Durler was convicted on three counts and ordered to pay $10,000 in restitution, which he did. The Debtors now seek to have that $10,000 credited against their payment obligations under their plan, relief the Bank opposes. As will be explained below, the Court concludes the restitution cannot be credited against payments on secured claims the Debtors are supposed to pay under their plan, but must be credited against certain unsecured debts to the extent they are to be paid under the plan.

**FACTS**

The parties have submitted a stipulation of facts, which the Court has supplemented by referring to other pleadings filed in this case, such as the order confirming the Debtors' plan.

When they filed a Chapter 12 bankruptcy petition on December 29, 2003, the Debtors owed the Bank secured debts under 12 different notes, a combined total of over $400,000. Earlier that year, Mr. Durler had sold cattle on which the Bank had a valid security interest, received over $60,000 for them, and used the money to pay bills other than the debt owed to the Bank. He has also been accused of impairing the Bank's security interests in certain crops during that year.

According to proofs of claim the Bank has filed in the Debtors' bankruptcy case, the Bank was able to recover on some of its security interests during the course of the case, and also recovered from the feed yard that sold the cattle mentioned above the loss

2

caused by the yard's failure to include the Bank's name on the check it gave to Mr. Durler.  The Bank and the Debtors agreed that the Bank's $90,000 mortgage on certain real property was fully secured, and that certain equipment secured another $87,500 owed to the Bank.  The Bank's last proof of claim, filed in October 2005, reported the remaining unsecured portion of its claims against the Debtors totaled $43,672.26, over half of which was prepetition interest.

In March 2004, the Bank filed a complaint seeking a determination that the Debtors' debts to it were nondischargeable.[1]  Claiming the debts were excepted from discharge by § 523(a)(2)(A) of the Bankruptcy Code, the Bank alleged the Debtors obtained money or an extension, renewal, or refinancing of credit "by making false representations to the Bank regarding, among other things, the types and amounts of property that could be used as collateral," including making "claims to ownership of certain items of collateral and the amount and purported value of certain items of collateral."  Claiming the debts were excepted from discharge by § 523(a)(6), the Bank alleged the Debtors willfully and maliciously injured the Bank by converting its collateral or the proceeds of its collateral, including "proceeds from the sale of cattle, government payments, and accounts receivable."  The parties eventually settled this adversary proceeding, agreeing $12,500 of the debts would be excepted from discharge, and the Debtors would pay that amount in three annual payments.  The settlement did not specify

---

[1]The complaint was assigned Adversary No. 04-5079.

which of the acts alleged in the complaint made that amount nondischargeable.

The Debtors' Chapter 12 plan was confirmed at a hearing in March 2005, and a confirmation order was entered in early May. As confirmed, the plan called for the Debtors to pay the Bank on three separate claims. First, they would pay $96,712.70 plus postpetition interest on a claim secured by real property by making 20 annual payments of $8,431.85 on August 1 each year. Second, they would pay $87,500 plus postpetition interest on a claim secured by equipment by making 8 annual payments of $14,653.43, also on August 1 each year. Finally, they would pay the $12,500 agreed in the adversary proceeding to be nondischargeable, without interest, by making 3 annual payments of $4,166.66,[2] due on July 1 each year. The plan also provided that unsecured claims would be paid pro rata from disposable funds (minus the Chapter 12 trustee fee) remaining, for a period not to exceed three years, after paying all other claims as provided by the plan. Since $12,500 of the Bank's unsecured claim was specially provided for in the plan, this provision would apply to the remaining $31,172.26 of that claim.

In December 2004, criminal charges were filed against Mr. Durler in a Kansas state court, alleging six counts of impairing security interests held by the Bank. Apparently, not much action was taken in this case for quite a while. Then on July 31, 2006, a judgment was entered under which Mr. Durler pleaded no contest to three counts

---

[2]The parties' stipulation says the three payments are to be exactly equal. The journal entry settling the adversary proceeding and the order confirming the plan both add an extra penny to the third payment, which the Court believes still leaves the sum of the payments one penny short of $12,500. The Court doubts the parties wish to argue over one or two pennies.

of impairing the Bank's security interests and was convicted. He was sentenced to jail and ordered to pay court costs and restitution of $10,000, but the jail time was suspended and he was placed on probation on condition he pay the costs and restitution within 90 days. He made the required payments and the $10,000 in restitution was remitted to the Bank.

Apparently the Debtors made their plan payments during 2005.[3] They also made the $4,166.66 payment that was due on July 1, 2006, although they allegedly paid a few days late.[4] They did not, however, make the two payments ($8,431.85 + $14,653.43, or a total of $23,085.28) that were due on August 1, 2006.

On August 24, the Debtors filed the motion addressed by this opinion, asking to have the $10,000 in restitution Mr. Durler paid in the criminal case credited toward their August 1 obligations on the Bank's claims, and to extend the time for paying the remainder of the 2006 obligations. The Bank objected.[5] Later, apparently sometime in November 2006, the Debtors paid $11,542.64 toward their obligations to the Bank, one-half of the total that was due on August 1.[6]

---

[3]The docket shows the Chapter 12 trustee filed a motion to show cause why the case should not be dismissed, docket no. 164, but none of the creditors complained and the trustee's motion was resolved, docket no. 166.

[4]*See* Bank's Motion to Dismiss, Docket No. 196, filed Nov. 8, 2006, at ¶ 1.

[5]The Credit Union of Dodge City and the Farm Service Agency also objected to proposals in the motion that affect them, but those objections will not be addressed in this opinion.

[6]The parties' stipulation says the Debtors paid that amount, and the Bank received it from the Chapter 12 trustee by a check dated November 27, 2006.

5

**DISCUSSION**

In this opinion, the Court will resolve only the question whether the restitution Mr. Durler paid in the state criminal case should be credited against the payments the Debtors owe under their Chapter 12 plan, and if so, how it should be credited. The Debtors argue the $10,000 in restitution paid to state court and then sent on to the Bank should be credited toward the August 2006 payments they were supposed to make to the Bank under their plan, suggesting that § 1229(a)(3) of the Bankruptcy Code, equity, and K.S.A. 60-4304(b) all require that result. The Bank responds that the restitution debt was a separate obligation, distinct from those the Debtors were to pay under their plan, that it was a nondischargeable obligation, and that the Debtors should not be allowed to amend their plan now to take into account an obligation they should have known might be imposed in the criminal case that had been filed before their plan was confirmed.

Neither the parties nor the Court have found any case authority dealing with a similar problem. The Bank suggests the Debtors' request to have the $10,000 in restitution credited toward their plan payments is barred by the *res judicata* effect of their confirmed plan. However, as the Debtors point out, § 1229(a)(3) of the Bankruptcy Code authorizes the modification of a confirmed plan to alter the distribution to a creditor whose claim is provided for by the plan "to the extent necessary to take account of any payment of such claim other than under the plan." When the Debtors' plan was confirmed, Mr. Durler had not yet been ordered to pay restitution to the Bank and the plan did not call for him to pay any restitution, so the $10,000 he paid through the criminal

6

case was clearly a payment "other than under the plan." Although the criminal case was pending when the Debtors' plan was confirmed, so the Debtors could have foreseen that restitution might be ordered in that case, Kansas law also gave the court presiding over the criminal case discretion it could have exercised to determine the Debtors' confirmed Chapter 12 plan, if completed, would satisfy the statutory requirement to impose a restitution obligation following Mr. Durler's conviction.[7] Consequently, the Court concludes § 1229(a)(3) can be applied in this case to alter the distributions that would otherwise be made to the Bank under the Debtors' plan.

Some of the statutes governing restitution under Kansas law help guide the Court's resolution of the parties' dispute. As the Court reads the journal entry of Mr. Durler's convictions, the state court imposed the same restitution obligation as part of the sentence and as one of the conditions of probation. In Kansas, when a person has been convicted of a crime, "the court shall order the [person] to pay restitution, which shall include, but not be limited to, damage or loss caused by the [person's] crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable."[8] Similarly, when a convicted person is placed on probation, the court is to order the person to "[m]ake reparation or restitution to the aggrieved party for the damage or loss caused by the [person's] crime, in an amount and manner determined by the court, unless the

---

[7]*See State v. Applegate*, 266 Kan. 102, 1075-80 (1999) (ruling district court did not abuse its discretion by deciding parties' prior settlement in civil action satisfied statutory requirement for restitution in criminal proceeding).

[8]K.S.A. 2005 Supp. 21-4603d(b)(1).
7

court finds compelling circumstances which would render a plan of restitution unworkable."[9] Two provisions in the Kansas criminal statutes indicate that restitution orders may be enforced as judgments under certain civil statutes.[10] One of the referenced civil statutes, in turn, provides: "A judgment of restitution will not bar any subsequent civil remedy or recovery, but the amount of any restitution paid shall be set off against any subsequent civil recovery."[11]

Taken together, these provisions convince the Court that a criminal restitution order imposed under Kansas law is not, as the Bank contends, separate and distinct from the civil liability that might result from the same act that constituted the crime. Instead, they are so related that any restitution the convicted criminal pays must be credited against his civil liability for the criminal act.

It is true, as the Bank argues, that restitution is excepted from discharge by § 523(a)(7), as construed in *Kelly v. Robinson*.[12] But the question before the Court is not about the dischargeability of the restitution. In fact, Mr. Durler has already satisfied the restitution obligation by paying it, and any bankruptcy discharge he may ultimately receive will not alter that fact. The question the Court must decide is whether his payment of the restitution obligation can also be credited against any of the civil payment

---

[9] K.S.A. 2005 Supp. 21-4610(d)(1).

[10] *See* K.S.A. 2005 Supp. 21-4603d(b)(2) and K.S.A. 22-3424(d).

[11] K.S.A. 60-4304(b).

[12] 479 U.S. 36, 43-53 (1986).

8

obligations the Debtors have under their plan.

The Court does not believe the restitution Mr. Durler paid can be credited against either of the secured claims the Debtors are supposed to pay the Bank under their plan. Those claims are secured by real property and equipment the Debtors still possess. The restitution obligation was imposed because Mr. Durler had disposed of some of the Bank's collateral, so the restitution was clearly related to a debt that his actions had turned into an unsecured claim. This fact establishes that the restitution obligation was separate and distinct from the Debtors' obligations on these still-secured claims. The Court will not require any of the $10,000 in restitution to be credited against either of the secured claims that the Debtors are to pay the Bank under their plan.

As shown by the Bank's last-filed proof of claim, after taking into account payments and recoveries that occurred between the time the Debtors filed for bankruptcy and the time their plan was confirmed, the Bank still held an unsecured claim against them for a total of $43,672.26, an amount that included interest up to the date of their petition. The parties' settlement of the Bank's adversary proceeding excepted $12,500 of this unsecured claim from discharge. The Debtors have already made two of the three payments on this nondischargeable debt that are required by their plan, leaving only one for $4,166.66 remaining. In the Bank's adversary complaint, the acts alleged to make the Debtors' obligations nondischargeable under § 523(a)(6) were clearly the same acts that led to Mr. Durler's criminal conviction and restitution obligation. The Court cannot tell whether or not the acts the Bank alleged made the debts nondischargeable under

9

§ 523(a)(2)(A) were related to Mr. Durler's improper use of the Bank's collateral. On the whole, however, the Court is convinced the restitution obligation and the nondischargeable debt are sufficiently related that the Bank must apply $4,166.66 of the restitution it received to the last payment the Debtors were to make under their plan on the nondischargeable debt. The remaining $5,833.34 must be credited against the balance of the Bank's unsecured claim, leaving the Bank with a claim of $25,338.92 to be paid under the Debtors' plan pro rata with other unsecured claims.

**CONCLUSION**

For these reasons, the Court concludes the Debtors are entitled to amend their plan, as allowed by § 1229(a)(3), to credit Mr. Durler's restitution payment against their obligations to the Bank. The restitution cannot, however, be credited against either of the secured claims they are paying to the Bank. Instead, $4,166.66 must be credited against the third and last payment they are obliged to make on the $12,500 debt the parties agreed was nondischargeable, and the remaining $5,833.34 must be credited against the Bank's remaining unsecured claim, leaving a balance of $25,338.92 to be paid pro rata with other unsecured claims as provided by the plan. The Court will consider the Bank's objection to the rest of the Debtors' motion along with the objections of the Credit Union of Dodge City and the Farm Service Agency, and the other matters scheduled for hearing on February 20, 2007.

# # #